NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-1253

COMMONWEALTH

vs.

KAMIYA SANTOS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a traffic stop in the early morning hours, the defendant was charged with various firearms violations and a civil motor vehicle infraction.  A jury convicted him of carrying a firearm without a license (G. L. c. 269, § 10 [a]), carrying a loaded firearm without a license (G. L. c. 269, § 10 [n]), defacement of a serial number on a firearm (G. L. c. 269, § 11C), and possession of ammunition without a firearm identification card (G. L. c. 269, § 10 [h] [1]).  The defendant raises two issues in this appeal.  First, he contends that State troopers unreasonably prolonged the length of time he spent sitting near the stopped car, effecting an unreasonable seizure.  Second, he contends that the Supreme Judicial Court's decision

in Commonwealth v. Ferrara, 496 Mass. 483, 488 (2025), requires a judgment of acquittal on the charge of defacement of a serial number on a firearm.  We affirm.

Background.  The defendant was a rear-seat passenger in a car that was stopped on Massachusetts Avenue in Boston by a State trooper in the early morning hours.  The trooper stopped the car after noticing that one headlight was not functioning and then discovering that the car had failed inspection.  The driver immediately pulled over, stopping on Massachusetts Avenue approximately two car lengths before the entrance to the South Bay Plaza.  Three people were in the car:  the driver, a front-seat passenger, and the defendant in the back seat.  Seeing that the front-seat passenger and the defendant did not have their seatbelts fastened, the trooper asked all three for their names and dates of birth to permit him to check their driver's license status and issue written warnings for the failure to wear seatbelts.

After returning to his cruiser, the trooper discovered that none of the three had a valid driver's license.  The same check revealed that none of them had a firearm license.  The trooper returned to the car and let the driver know that none of the three could drive the car away, but that a licensed driver could come pick up the car.  At that point, the trooper intended to

issue written warnings to both the defendant and the front-seat passenger for their failure to wear a seatbelt.

The driver was unable to find someone to retrieve the car, so the trooper returned to his cruiser to request that the car be towed. At or around this time, two more troopers arrived and began to assist the first trooper. The first trooper returned to the car and told all three occupants to get out, taking their personal belongings, and sit on the sidewalk. The second and third trooper were in the vicinity while the first trooper began an inventory search of the car pursuant to the State police inventory policy, which was admitted in evidence at the suppression hearing. The policy requires that closed and unlocked containers be opened and examined.

After completing the inventory of the driver's side of the car, the trooper moved to the passenger's side, where he had already spied a plastic bag on the floor in front of the front passenger seat. After opening the front passenger door, the trooper bent over and saw that the plastic bag was open; inside, the trooper saw what he believed to be the butt end of a firearm.

The trooper returned to the three men and, saying something about a gun, told the front-seat passenger to stand up, instructing that the passenger be handcuffed. The defendant got up and started running into the South Bay parking lot with the

3

second and third troopers in pursuit.  The defendant fell and the troopers caught up with him.  A trooper patted him down, found a gun in his waistband, and removed it.

Discussion.  The defendant challenges the length of time he spent sitting at the curb before the trooper found the firearm in the passenger seat of the car.  Asserting that the proper stop of the car was a "routine traffic stop" whose duration was bounded by reasonableness, the defendant asserts that the trooper should have written the defendant a warning for his seatbelt infraction before performing the inventory search.[1]

In reviewing the denial of a motion to suppress, "[w]e accept the motion judge's findings of fact unless they are clearly erroneous . . . ."  Commonwealth v. Bell, 473 Mass. 131, 138 (2015), cert. denied, 579 U.S. 906 (2016).  Where, as here, we find no clear error of fact, "our legal analysis focuses on 'the correctness of the judge's application of constitutional principles to the facts as found.'"  Commonwealth v. Depina, 456 Mass. 238, 241 (2010), quoting Commonwealth v. Scott, 440 Mass. 642, 646 (2004).

"A valid investigatory stop 'cannot last longer than reasonably necessary to effectuate the purpose of the stop'"

---

[1] The defendant does not challenge the lawfulness of the traffic stop, the trooper's decision to tow the car, the subsequent exit order, the inventory search, or the defendant's initial detention on the curb.

(quotation omitted).  Commonwealth v. Tavares, 482 Mass. 694, 703 (2019), quoting Commonwealth v. Amado, 474 Mass. 147, 151 (2016).  "The scope of a stop may only extend beyond its initial purpose if the officer is confronted with facts giving rise to a reasonable suspicion that 'further criminal conduct is afoot.'"  Tavares, supra, quoting Commonwealth v. Cordero, 477 Mass. 237, 243 (2017).

In the circumstances of this case, the trooper was not obligated to issue the seatbelt warning before beginning the inventory search, and the brief delay that followed, lasting until the trooper discovered the firearm in the car, was not unreasonable.  See Commonwealth v. Moore, 54 Mass. App. Ct. 334, 340 (2002) ("ultimate touchstone of art. 14 and the Fourth Amendment is whether a search or seizure was reasonable in the circumstances").  The trooper reasonably asked the defendant and his companions to sit on the curb after determining that the car needed to be towed.  As the defendant concedes, the tow required the trooper first to conduct an inventory search, since the car could have contained valuable or important personal property.  Although the defendant was detained on the side of the road, it was nearly 2 A.M. and he was seated along a private parking lot for a store that was closed at that time, thus mitigating concerns about the effect of a public detention on the defendant's liberty interests.  Given these circumstances, the

5

judge committed no error in denying the defendant's motion to suppress. Cf. Commonwealth v. Catanzaro, 441 Mass. 46, 56 (2004) ("There is no ready test for reasonableness [under art. 14] except by balancing the need to search or seize against the invasion that the search or seizure entails").

The defendant also maintains that the defacement conviction was inconsistent with Ferrara and therefore must be reversed. As it appeared at the time of the offenses in both this case and in Ferrara, G. L. c. 269, § 11C, required the Commonwealth to prove "either that the defendant defaced the firearm or that he or she knowingly received a firearm so defaced." Ferrara, 496 Mass. at 488. Under the statute, "'possession or control of a [defaced] firearm' constitute[d] prima facie evidence of a violation," but the statute allowed that presumption to be "rebutted by evidence that such person had no knowledge whatever that such number had been removed . . . or by evidence that he had no guilty knowledge thereof." Id., quoting G. L. c. 269, § 11C.

The defendant asserts that his case was "indistinguishable from Ferrara," and that therefore he is entitled to a judgment of acquittal on the charge of defacement of a serial number on a firearm. We are not persuaded. In Ferrara, 496 Mass. at 488-498, the judge did not instruct the jury that possession of a firearm with a defaced serial number created a rebuttable

6

presumption that the defendant had violated the statute, and the Commonwealth proved only that the defendant possessed a firearm with a defaced serial number.  Because there was no evidence "proving the theory upon which the jury were instructed, i.e., that the defendant knowingly and intentionally defaced the firearm," the conviction was reversed.  Id. at 489.

Here, by contrast, the judge did instruct the jury on possession as prima facie evidence of a violation.  After instructing that the jury must determine "whether the Commonwealth has proven beyond a reasonable doubt that a serial number or identification number on the firearm was removed, defaced, altered, obliterated, or mutilated by the defendant," the judge instructed first on intentional defacement:  the Commonwealth "must prove that some part of the number was intentionally removed, defaced, altered, obliterated, or mutilated, or to use other words, damaged, scratched out, or destroyed by the defendant."  He then continued:

"You have also heard some evidence in this case suggesting that the defendant possessed a firearm with a defaced, altered, or obliterated serial number.

"If you find that fact that he was in possession of such a firearm, you are permitted to accept it also as sufficient proof that the defendant was the person who removed, defaced, altered, obliterated, or mutilated the serial number or identification number on that firearm.

"If there is contrary evidence about whether it was the defendant who caused the damage, you are to treat any testimony about possession like you would any other piece of

7

evidence, and you should weigh it along with the rest of the evidence on the issue of who caused the damage."

Those instructions distinguish this case from Ferrara. In this case, the trial evidence established that the serial number was defaced or obliterated. The firearm was taken from the defendant's person and was introduced in evidence along with the trooper's testimony that it was seized from the defendant's person. The trooper testified that this type of firearm would have a serial number on the butt, "and that this firearm had no visible serial number when he found it." The "prima facie evidence of a violation" was established by the evidence that the defendant had possession of the firearm with a blank space instead of a serial number, and no contrary evidence was introduced. See Ferrara at 488-489. This was enough to sustain the verdict.

Judgments affirmed.

By the Court (Neyman, Hershfang & Toone, JJ.[2]),

Paul Little

Clerk

Entered: July 6, 2026.

---

[2] The panelists are listed in order of seniority.